UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH                                          (973) 645-4693
BANKRUPTCY JUDGE                                               Fax: (973) 645-2606

**NOT FOR PUBLICATION**

```
FILED
JAMES J. WALDRON, CLERK

FEBRUARY 4, 2010

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY
```

February 4, 2010

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Forman Holt Eliades & Ravin LLC       United States Department of Justice
80 Route 4 East, Suite 290                 Office of the United States Trustee
Erin J. Kennedy, Esq.                     Donald F. MacMaster, Esq.
Robert H. Johnson, Esq.                 One Newark Center, Suite 2100
Paramus, New Jersey 07652             Newark, NJ 07102
*Attorneys for Debtors*                      *United States Trustee*

Re:     **In re Maria Ivette Cardona-Pereira and Alexander Pereira**
          **Case No. 08-18337 (DHS)**

Dear Counsel:

      Before the Court is the United States Trustee's ("Trustee") motion to dismiss the chapter 7 case filed by Maria Ivette Cardona-Pereira ("Cardona") and Alexander Angel Pereira ("Pereira") (collectively referred to as the "Debtors") pursuant to § 707(b)(1) of the Bankruptcy Code. The Trustee argues that dismissal is appropriate for bad-faith filing under § 707(b)(3)(A) or based on the totality of the Debtors' financial circumstances under § 707(b)(3)(B). In support of dismissal for filing in bad faith, the Trustee contends that the Debtors made sizable expenditures well beyond their income and they filed with the intention of obtaining a discharge while retaining luxury items. In support of dismissal based on the totality of the circumstances, the Trustee asserts that the Debtors'

Page 2
February 4, 2010

ability to fully repay their unsecured debt, based on post-petition disposable income, demonstrates that granting a discharge would be an abuse of chapter 7.

The Debtors argue that dismissal under § 707(b)(3)(A) for filing in bad faith is unwarranted because they had justifiable reasons for accumulating debt and they acted honestly on the eve of bankruptcy and throughout the pendency of the case. They further contend that dismissal under § 707(b)(3)(B) is not appropriate because their financial circumstances must be considered at the time of filing and that ability to pay in and of itself is not dispositive.

For the reasons stated hereafter, the Trustee's motion to dismiss is granted pursuant to § 707(b)(3)(B). The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## Statements of Fact and Procedural History

I.  **Trustee's Statement of Facts**

The Debtors filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code on May 5, 2008. (Mem. of Law in Supp. of Mot. to Dismiss ("Supp.") 2). Their schedules of assets included $1,040,000 of real property and $32,715 of personal property. *Id.* at 3-4. In the two years prior to filing, the Debtors' tax returns indicated combined wages of more than $200,000 per year. *Id.* at 4-5. The Debtors listed secured claims totaling $1,052,496.85, which included mortgages on a residence in New Jersey and a condominium unit in Massachusetts, and a loan for a boat. *Id.* at 3. The Debtors indicated through testimony and on their statement of intention that they intend to retain both real properties. *Id.* at 4. Additionally, they reaffirmed the debt secured by the boat. *Id.* at 7. The Debtors listed unsecured nonpriority claims that total $245,214.64. *Id.* at 4.

On the petition date, Cardona was employed as a teacher and Pereira was unemployed. Id. at 4-5. They also received monthly rental income from the condominium unit. *Id.* The Debtors' combined average monthly income totaled $7,129.50. *Id.* at 5. Their monthly expenditures totaled $11,745.12, which included mortgage payments in the amount of $8,200.00 and a boat payment in the amount of $195.12. *Id.* at 5. Therefore, the Debtors reported a monthly deficit of $4,615.62 on their petition. *Id.* at 5.

The Debtors' financial situation dramatically improved shortly after filing. In June of 2008, Pereira began a new job in New Jersey earning $150,000 annually and Cardona received a pay increase of approximately $5,000 annually. *Id.* at 6. Consequently, the Debtors' post-petition monthly net income increased from $7,129.50 to an estimated $16,436.36. *Id.* at 6. As a result of the additional income, the Debtors' disposable monthly income increased to approximately $4,691.24. *Id.* at 7. A monthly payment of $4,086.91 would satisfy the Debtors' unsecured debt

Page 3
February 4, 2010

of $245,214.64 in full over a sixty-month period. *Id.* at 7. Thus, at the time the Trustee's motion was filed, the Debtors were capable of satisfying from income (without the sale of assets) unsecured creditors in full over a sixty month-period. *Id.*

## II.     Debtors' Statement of Disputed and Additional Facts

The Debtors allege that much of their debt resulted from the necessity to maintain a second residence in Boston, where Pereira was previously employed. (Opp'n 5). The expense of maintaining two households coupled with the sporadic nature of Pereira's compensation caused the Debtors to gradually incur debt over time. (Opp'n 5). Pereira lost his job on December 14, 2007 and Cardona's income alone was insufficient to support the Debtors' previous lifestyle. (Mem. of Law in Opp'n of Mot. to Dismiss ("Opp'n") 1-2). At first, the Debtors believed their setback to be temporary. (Opp'n 2). They stopped using credit cards and for a time managed to keep up with their expenses by borrowing from retirement funds and relatives. (Opp'n 2). Despite these measures, the Debtors were eventually unable to pay their debts as they came due and they filed for bankruptcy. (Opp'n 1).

## Legal Analysis

### I.     Dismissal For Abuse Under § 707(b)(1)

Section 707(b)(1) of the United States Bankruptcy Code provides that a court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." "To determine whether the granting of relief would be an abuse, [a] [c]ourt is guided by the 'means test' . . . established by § 707 (b)(2)(A)(i)" *In re Wilson,* 356 B.R. 114, 115 (Bankr. D. Del. 2006). "If the presumption of abuse does not arise under the means test or if a debtor successfully rebuts the presumption, a debtor's chapter 7 case still may be dismissed [under § 707(b)(3)(A) or (B)] if 'the debtor filed the petition in bad faith . . . or . . . [if] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.'" *Id.* at 116.

Accordingly, a court may dismiss a case under § 707(b)(1) if three elements are satisfied: (1) The debtor is an individual; (2) the debts are primarily consumer debts; and (3) granting the debtor relief would be an abuse of chapter 7 under (i) the "means test" of § 707(b)(2)(A)(i); (ii) § 707(b)(3)(A) for bad faith in filing; or (iii) § 707(b)(3)(B) if granting a discharge would be an abuse of chapter 7 under the totality of the circumstances. *See In re Naut*, 2008 WL 191297, at *3 (Bankr. E.D. Pa. 2008).

In this case, it is undisputed that the Debtors are individuals and their debts are primarily consumer in nature. (Opp'n). A presumption of abuse did not arise under the "means test" on the petition date. (Supp. 8). Therefore, the Court may dismiss this case only if the Debtors filed the petition in bad faith or the totality of the Debtors' financial circumstances demonstrates abuse.

Page 4
February 4, 2010

### A.      Dismissal for Filing in Bad Faith Under § 707(b)(3)(A)

Under § 707(b)(3)(A), a court may consider "whether the debtor filed the petition in bad faith" as a basis for dismissal. The section was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and no court in this circuit appears to have thus far discussed application of the section. Pub. L. No. 109-8, 2005 U.S.C.C.A.N. (119 Stat. 23) (codified at 11 U.S.C. §§ 101-1532). "There are only a few published 'bad faith' cases [relating to § 707(b)(3)(A)] in the post-BAPCPA era." Robert J. Landry, III, The Means Test: Finding a Safe Harbor, Passing the Means Test, or Rebutting the Presumption of Abuse May Not be Enough, 29 N. Ill. U. L. Rev. 245, 262 (2009).

One highly cited opinion, *In re Oot*, stated in dicta that § 707(b)(3)(A) was "best understood as a codification of pre-BAPCPA case law," which had recognized bad faith in filing as a basis for dismissal. *In re Oot*, 368 B.R. 662, 665-66 (Bankr. N.D. Ohio 2007). Based on this reasoning, the court in *Oot* applied the analysis from the Sixth Circuit's pre-BAPCPA "bad faith in filing" cases. *In re Oot*, 368 B.R. at 666-67.

The court in *In re Mitchell* also reasoned that pre-BAPCPA case law from its circuit should be incorporated in applying § 707(b)(3)(A). *In re Mitchell*, 357 B.R. 142, 153 (Bankr. C.D. Cal. 2006). Additionally, the *Mitchell* court looked to its circuit's "standards for bad faith dismissal used in Chapter 11 and Chapter 13 cases." *Id.* at 153-54. The court reasoned that standards for bad-faith dismissal should be the same under each chapter, because "the harm of filing a voluntary petition in bad faith is essentially the same" regardless of chapter and "creating a variety of bad faith standards . . . would be unnecessarily confusing and would only encourage potential bad-faith filers to choose the chapter of the Code that appears to have the most favorable bad faith test." *Id.*

This Court finds the reasoning of *Oot* and *Mitchell* persuasive. Pre-BAPCPA case law relating to dismissal under chapter 7 for filing in bad faith is relevant to dismissal under § 707(b)(3)(A). As suggested by *Mitchell*, the standard should also incorporate standards for bad-faith dismissal under other chapters. Accordingly, the Court will first look to *In re Tamecki* for the Third Circuit's pre-BAPCPA standard for dismissal for bad faith in filing under chapter 7. *In re Tamecki*, 229 F.3d 205 (3d Cir. 2000). Second, the Court will consider *In re Myers*, in which the Third Circuit considered the dismissal standard for a bad faith filing under chapter 13. *In re Myers*, 491 F.3d 120 (3d Cir. 2007).

In *Tamecki*, the debtor accumulated $35,000 in debt while earning less than one-tenth that amount annually. *Tamecki*, 229 F.3d at 207. No sudden dramatic event or loss of income necessitated accrual of such a large debt. *Id.* Moreover, the debtor filed for bankruptcy just before finalization of his divorce would have severed a jointly held property interest, thus exposing his property interest to his creditors. *Id.*

Page 5
February 4, 2010

The Third Circuit affirmed dismissal of the case for filing in bad faith, stating that bad faith should be determined "on an ad hoc basis [according to] whether the petitioner has abused the provisions, purpose, or spirit of bankruptcy law." *Id.* at 207-8.  The Court noted that although the Code does not define good faith, "courts in this circuit have uniformly held that 'at the very least, good faith requires a showing of honest intention.'" *Id.* (quoting *In re Marks*, 174 B.R. 37, 40 (E.D. Pa. 1994).  The Court cautioned that bad faith "'should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence.'" *Id.* at 207 (quoting *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991)).  The Court ultimately determined that, although "ability to repay is not in and of itself sufficient proof of bad faith," the nature of the debt and the timing of the filing exhibited bad faith in filing.  *Tamecki*, 229 F.3d at 208.

In *Myers*, a judgment creditor of a married couple and two companies owned by the husband brought suit in state court attempting to recover assets it alleged were fraudulently transferred to a corporation of which the wife was the sole shareholder.  *Id.*  On the eve of the court's ruling, the wife filed for chapter 13 bankruptcy, which suggested the wife's "filing was a tactic to prevent an adverse ruling." *Id.* at 125.  The creditor's judgment represented the vast majority of the wife's debt.  *Id.*  Additional facts showed that at the time of filing, the wife "did not meet the requirements for filing a chapter 13 petition."  *Id.* at 125.

The Third Circuit affirmed the bankruptcy court's dismissal for filing in bad faith.  *Id.* at 125.  Relying in part on *Tamecki*, the Court noted that all relevant factors should be considered including

> the nature of the debt . . . ; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Id.* at 125 (quoting *In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996)).  Applying these factors, the Court affirmed dismissal based on the suspicious timing of the filing, the purpose to defeat the pending litigation, how the debt arose, and the debtor's ineligibility for chapter 13.  *Myers,* 491 F.3d at 125-27.

Because "[t]he determination of bad faith is 'a fact intensive determination,'" courts should make a determination on a case-by-case basis according to "whether the petitioner has abused the provisions, purpose or spirit of bankruptcy law."  *Myers,* 491 F.3d at. 125 (quoting *Lilley*, 91 F.3d at 496); *Myers* 491 F.3d at 126 (quoting *Tamecki*, 229 F.3d at 207).  In the instant case, the Court is not persuaded that the Debtor filed for bankruptcy in bad faith or with the intent at the time of filing to abuse the process.  Although the Debtors had over $245,000 in unsecured debt on the petition date, it was accumulated gradually, over a period of years, rather than in the immediate

Page 6
February 4, 2010

months before filing. While much of the debt was accumulated, the Debtors earned substantial income, which indicates that they were capable of repayment. In December of 2007, the Debtors suffered a sudden and unforeseeable loss of income due to Pereira's job loss. The Debtors only resorted to bankruptcy after Pereira had been unemployed for months and after borrowing from retirement funds and relatives to pay their expenses. There is no evidence that the Debtors filed to forestall a judgment or to frustrate an executing creditor. Additionally, throughout the case, the Debtors have been forthcoming and cooperative with all of the Trustee's requests for information. For the foregoing reasons, the Court finds that dismissal based on bad faith in filing is not warranted.

### B.   Dismissal Based Upon the Totality of the Circumstances Under § 707(b)(3)(B)

Under § 707(b)(3)(B), a court may dismiss a case where "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. §§ 707(b)(3). The "totality of the circumstances" test, like "bad faith," was added by BAPCPA as a basis for dismissal. But, unlike "bad faith," the standard for dismissal under the "totality of the circumstances" approach has already been considered by other courts in this Circuit.

Where "granting of relief would be an abuse" of chapter 7, the "totality of the circumstances" test permits dismissal given a "debtor's financial situation." 11 U.S.C. § 707(b)(1), (3). The debtor's ability to pay is the primary determinant for demonstrating abuse. *See In re Lenton*, 358 B.R. 651, 662-64 (Bankr. E.D. Pa. 2006); *see also In re Pennington*, 348 B.R. 647, 649 (Bankr. D. Del. 2006). Moreover, some pre-BAPCPA cases held that ability to pay may alone be sufficient for a finding of abuse. *See e.g., In re Lamanna* 153 F. 3d 1 (1st Cir. 1998). Significantly, the legislative history of § 707 clearly indicates that Congress intended to ratify the *Lamanna* line of cases and overrule those cases that eschewed debtors' ability to pay as a sufficient basis for finding abuse. *See* Bankruptcy Reform Act of 2000 – Conference Report, 146 Cong. Rec. 11683-02, 11703 (2000).

In determining a debtor's ability to pay, a court may consider a debtor's "actual and anticipated financial" ability to repay creditors during a hypothetical chapter 13 commitment period. *Lenton*, 358 B.R. at 664; *see also Pennington*, 348 B.R. at 651. The Trustee bears the burden of proof to show "a debtor's ability to make substantial payment on unsecured debt," after which a debtor must demonstrate he is otherwise entitled to chapter 7 relief. *Lenton*, 358 B.R. at 664-65. The debtor's financial condition is to be considered "at the time of the hearing on the motion to dismiss," which necessarily includes all post-petition events. *Pennington*, 348 B.R. at 651. "There is no indication in the language of the statute or in the legislative history that Congress meant to limit temporally [a] [c]ourt's consideration of [a] [d]ebtor's financial condition" to the date of filing. *Id.*

The Debtors here argue that the *filing* must be abusive to warrant dismissal under § 707. (Opp'n 10-11). However, the language of § 707(b)(1) states that dismissal is appropriate where "granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. §§707(b)(1).

Page 7
February 4, 2010

"Section 707 does not condition dismissal on the *filing* of bankruptcy being a[n] ["abuse"] but rather on the *granting of relief."* *In re Cortez*, 457 F.3d 448, 455 (5th Cir. 2006).

In *Pennington*, the debtor had a monthly income deficit on the petition date. *Id.* at 648, 651. Subsequent to filing, the debtor surrendered his car and purchased a less expensive car. *Id.* at 648. As a result, he had $212.71 in disposable monthly income. *Id.* at 651. Consequently, the debtor was able to "repay 42% of his unsecured debt in a three-year plan and 69% of his unsecured debt in a five-year plan." *Id.* at 652. Under these circumstances, the court granted the trustee's motion to dismiss, finding under § 707(b)(3)(B) that granting relief would be an abuse of chapter 7. *Pennington*, 348 B.R. at 652.

In the instant case, the facts are overwhelming. The Debtors reported average monthly income of $7,129.50 and monthly expenditures of $11,745.12 on their petition, resulting in a monthly deficit of $4,615.62. (Supp. 5). Almost immediately after filing, the Debtors' monthly net income dramatically increased to approximately $16,436.36. *Id.* As a result, their disposable monthly income increased to approximately $4,691.24. *Id*. at 7. With this amount of disposable income, the Debtors could fully satisfy unsecured creditors' claims over a sixty-month commitment period. *Id*.

These Debtors not only have the ability to make substantial payment on unsecured debt, they have the ability to satisfy unsecured creditors in full. The Debtors have demonstrated no countervailing reason why they are entitled to a chapter 7 discharge in light of their ability to pay creditors. The Court finds that under the totality of the circumstances, granting a discharge to these Debtors would be an abuse of chapter 7. Accordingly, the Trustee's motion to dismiss is granted pursuant to § 707(b)(3)(B) of the Code.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

Very truly yours,

*/s / Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure